# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | |
|---|---|
| CHELSEA DOGIE, Individually and For Others Similarly Situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>JAB INSPECTION SERVICES, LP,<br><br>　　　　Defendant. | Case No. 3:20-cv-00187<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)<br><br>CLASS ACTION PURSUANT TO FED. R. CIV. P. 23 |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Chelsea Dogie (Dogie) brings this lawsuit to recover unpaid overtime wages and other damages from JAB Inspection Services, LP (JAB) under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and the Pennsylvania Minimum Wage Act (PMWA), *see* 43 P.S. § 33.101 *et seq.*

2. Dogie worked for JAB as an Office Manager in New Stanton and Washington, Pennsylvania.

3. Dogie and the Day Rate Office Managers (defined below) regularly worked more than 40 hours a week.

4. But JAB did not pay them overtime.

5. Instead of paying overtime as required by the FLSA and PMWA, JAB pays its Office Managers a flat amount for each day worked (a "day rate") without overtime compensation.

6. JAB never paid Dogie or the Day Rate Office Managers a guaranteed salary.

7. This class collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. The Court also has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

10. Venue is proper under 28 U.S.C. § 1391(b)(1) because JAB maintains its headquarters in this District and Division.

11. Indeed, JAB maintains its headquarters in Galveston County, Texas.

## PARTIES

12. Dogie worked for JAB as an Office Manager from approximately March 2017 until January 2018 in New Stanton and Washington, Pennsylvania.

13. Throughout her employment, JAB paid Dogie a flat daily rate for each day worked regardless of the total hours worked in a work week ("day rate pay plan").

14. Dogie's consent to be a party plaintiff is attached as Exhibit 1.

15. Dogie brings a FLSA collective action on behalf of herself and all other JAB's Day Rate Office Managers who were paid according to JAB's day rate pay plan.

16. JAB paid each of these workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 in a workweek.

17. The collective of similarly situated employees or Day Rate Office Managers sought to be certified is defined as follows:

> **All JAB Office Manager that JAB paid according to its day rate pay plan at any time in the last 3 years (the "FLSA Day Rate Office Managers").**

18. Dogie also seeks class certification of an additional class under Fed. R. Civ. P. 23 under the PMWA as follows:

>**All JAB Office Managers in Pennsylvania that JAB paid according to its day rate pay plan at any time in the last 3 years (the "Pennsylvania Day Rate Office Managers").**

19. The FLSA Day Rate Office Managers and the Pennsylvania Day Rate Office Managers are referred to collectively as the Day Rate Office Managers.

20. The Day Rate Office Managers can be readily ascertained from JAB's records.

21. JAB may be served with process by serving its registered agent: **Joseph Hatfield, 1709 Sandy Lake Drive, Friendswood, Texas 77546**.

### FLSA & PMWA COVERAGE

22. At all relevant times, JAB has been an employer within the meaning of section 3(d) of the FLSA. 29 U.S.C. § 203(d).

23. At all relevant times, JAB has been an employer within the meaning of the PMWA. 43 P.S. § 333.103(g).

24. At all relevant times, JAB has been part of an enterprise within the meaning of section 3(r) of the FLSA. 29 U.S.C. § 203(r).

25. At all relevant times, JAB has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

26. At all relevant times, JAB has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

27. In each of the past 3 years, JAB's annual gross volume of sales has exceeded $1,000,000 for at least the past 3 years.

28. At all relevant times, Dogie and the Day Rate Office Managers were engaged in commerce or in the production of goods for commerce.

29. JAB uniformly applied its policy of paying its Office Managers, including Dogie, a day rate with no overtime compensation.

30. JAB applied this policy regardless of any alleged individualized factors such as geographic location.

31. By paying its Office Managers a day rate with no overtime compensation, JAB violated (and continues to violate) the FLSA and PMWA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

32. As a result of JAB's day rate pay plan, Dogie and the Day Rate Office Managers do not receive overtime as required by the FLSA and PMWA.

33. JAB's day rate pay plan is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTUAL ALLEGATIONS

34. JAB "provides Inspectors to top US Entergy Companies" and bills itself of "know[ing] the ins and outs of Inspection like no one else[.]"[1]

35. To complete its business objectives, JAB hires personnel, such as Dogie, to perform a office manager services as part of its inspection services for oil and gas companies.

36. Many of these individuals worked for JAB on a day rate basis (without overtime pay).

37. These workers make up the proposed collective of Day Rate Office Managers.

38. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

39. For example, Dogie worked for JAB as an Office Manager from approximately March 2017 until January 2018 in New Stanton and Washington, Pennsylvania.

---

[1] https://www.jabinspectionservices.com/home.html (last visited June 2, 2020).

40. Throughout Dogie's employment with JAB, JAB paid him on a day rate basis.

41. Dogie and the Day Rate Office Managers work for JAB under its day rate pay plan.

42. Dogie and the Day Rate Office Managers do not receive a salary as required to be exempt under the FLSA and PMWA.

43. If Dogie and the Day Rate Office Managers did not work, they did not get paid.

44. Dogie and the Day Rate Office Managers do not receive overtime pay.

45. This is despite the fact Dogie and the Day Rate Office Managers often work for at least 10 hours a day, for up to 7 days a week, for weeks at a time.

46. Although Dogie and the Day Rate Office Managers typically worked up to 7 days a week, for at least 10 hours a day, they did not receive any overtime pay.

47. Dogie and the Day Rate Office Managers received the day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

48. Dogie's work schedule is typical of the Day Rate Office Managers.

49. JAB knows Dogie and the Day Rate Office Managers work for at least 10 hours a day, for up to 7 days a week.

50. JAB's records reflect the fact that Dogie and the Day Rate Office Managers regularly work far in excess of 40 hours in certain workweeks.

51. JAB does not pay Dogie or the Day Rate Office Managers overtime for hours worked in excess of 40 in any of those weeks.

52. Instead, JAB pays Dogie and the Day Rate Office Managers on a day rate basis.

53. Dogie and the Day Rate Office Managers are not employed on a salary basis.

54. Dogie and the Day Rate Office Managers do not, and have never, received guaranteed weekly compensation from JAB irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

55. JAB's policy of paying Dogie and the Day Rate Office Managers a day rate with no overtime compensation violates the FLSA and PMWA because it deprives Dogie and the Day Rate Office Managers of overtime for the hours they work in excess of 40 hours in a single workweek.

56. JAB knew Dogie and the Day Rate Office Managers worked more than 40 hours in a week.

57. JAB controls Dogie and the Day Rate Office Managers' work.

58. JAB requires Dogie and the Day Rate Office Managers to follow JAB's policies and procedures.

59. Dogie and the Day Rate Office Managers' work must adhere to the quality standards put in place by JAB.

60. Dogie and the Day Rate Office Managers are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

61. As an Office Manager, Dogie was responsible for ensuring all documentation for the inspection job, such as daily reports, was completed and compiled according to JAB's policies, procedures, standards, and specifications.

62. All of the Day Rate Office Managers perform similar duties of ensuring all documentation for the inspection job, such as daily reports, was completed and compiled according to the established guidelines, specification, and restrictions set by JAB.

63. As a result, the Day Rate Office Managers do not exercise independent judgment or discretion as to matters of significance.

64. Dogie's working relationship with JAB is similar to JAB's relationship with its other Day Rate Office Managers.

65. The Day Rate Office Managers do not manage general business operations of JAB.

66. JAB knew, or showed reckless disregard for whether, the Day Rate Office Managers were entitled to overtime under the FLSA and PMWA.

67. Nonetheless, JAB failed to pay Dogie and the Day Rate Office Managers overtime.

68. JAB knowingly, willfully, or in reckless disregard carried out this illegal day rate pay plan that deprived Dogie and the Day Rate Office Managers of overtime compensation in violation of the FLSA and PMWA.

69. JAB's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay these employees overtime made in good faith.

70. JAB willfully violated the FLSA.

## CAUSE OF ACTION
## FLSA VIOLATION

71. JAB's day rate pay plan violates the FLSA because Dogie and the other Day Rate Office Managers did not receive overtime pay for hours they worked in excess of 40 in a week.

72. JAB knew, or showed reckless disregard for whether, its day rate pay plan violated the FLSA.

73. JAB's failure to pay overtime compensation to the Day Rate Office Managers was not based on any reasonable interpretation of the law.

74. Nor was JAB's decision not to pay its Day Rate Office Managers overtime made in good faith.

75. Accordingly, Dogie and the Day Rate Office Managers are entitled to recover their unpaid overtime under the FLSA, liquidated damages, attorneys' fees, and costs.

## CAUSE OF ACTION
## PMWA VIOLATION

76. Dogie brings his claim under the PMWA as a Rule 23 class action.

77. The conduct alleged violates the PMWA.

78. At all relevant times, JAB was subject to the requirements of the PMWA. 43 P.S. § 333.103(g).

79. At all relevant times, JAB employed Dogie and the Pennsylvania Day Rate Office Managers as "employees" within the meaning of the PMWA. 43 P.S. § 333.103(h).

80. The PMWA requires employers like JAB to pay employees at 1.5 times their regular rate of pay for hours worked in excess of 40 in any week. 43 P.S. § 333.104(c) or 34 Pa. Code § 231.43(b).

81. Dogie and the Pennsylvania Day Rate Office Managers are entitled to overtime under the PMWA.

82. JAB has and has had a policy and practice (its day rate pay plan) that failed to pay Dogie and the Pennsylvania Day Rate Office Managers overtime for hours worked in excess of 40 in a workweek.

83. Dogie and the Pennsylvania Day Rate Office Managers seek unpaid overtime in amount equal to 1.5 times their regular rates of pay for work performed in excess of 40 in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

84. Dogie and the Pennsylvania Day Rate Office Managers also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by JAB, as provided by the PMWA.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

85. Dogie brings this claim as a class and collective action under the FLSA and PMWA.

86. The Day Rate Office Managers were victimized by JAB's day rate pay plan which is in willful violation of the FLSA and PMWA.

87. Other Day Rate Office Managers worked with Dogie and indicated they were paid in the same manner (a day rate with no overtime) and performed similar work.

88. Based on his experiences with JAB, Dogie is aware that JAB's illegal day rate pay plan was imposed on the Day Rate Office Managers.

89. The Day Rate Office Managers are similarly situated in all relevant respects.

90. Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

91. The illegal day rate pay plan JAB imposed on Dogie was imposed on all Day Rate Office Managers.

92. Like Dogie, the other Day Rate Office Managers are denied overtime when they work more than 40 hours per week.

93. The overtime owed to Dogie and the Day Rate Office Managers will be calculated using the same records and the same formula.

94. Dogie's experiences are therefore typical of the experiences of the Day Rate Office Managers.

95. The specific job titles or precise job locations of the various members of the Putative Class do not prevent class or collective treatment.

96. Dogie has no interest contrary to, or in conflict with, the Day Rate Office Managers that would prevent class or collective treatment.

97. Like all Day Rate Office Managers, Dogie has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

98. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

99. Absent a class or collective action, many Day Rate Office Managers will not obtain redress of their injuries, and JAB will reap the unjust benefits of violating the FLSA and PMWA.

100. Further, even if some of the Day Rate Office Managers could afford individual litigation against JAB, it would be unduly burdensome to the judicial system.

101. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Day Rate Office Managers, as well as provide judicial consistency.

102. The questions of law and fact that are common to each Day Rate Office Manager predominate over any questions affecting solely the individual members.

103. Among the common questions of law and fact are:

    a. Whether JAB's decision to pay a day rate with no overtime compensation to these workers was made in good faith;

    b. Whether JAB's violation of the FLSA was willful; and

    c. Whether JAB's illegal pay practice applied to the Day Rate Office Managers.

104. Dogie and the Day Rate Office Managers sustained damages arising out of JAB's illegal and uniform employment policy.

105. Dogie knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class and collective action.

106. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to JAB's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective treatment.

107. Consistent with JAB's illegal day rate policy, Dogie and the Day Rate Office Managers were not paid overtime when they worked more than 40 hours in a workweek.

108. As part of their regular business practices, JAB intentionally, willfully, and repeatedly applied its day rate pay plan to Dogie and the Day Rate Office Managers.

109. JAB's illegal day rate pay plan deprived Dogie and the Day Rate Office Managers of the premium overtime wages they are owed under federal law.

110. JAB is aware, or should have been aware, that the FLSA required it to pay Dogie and the Day Rate Office Managers overtime premiums for hours worked in excess of 40 in a workweek.

111. There are many similarly situated Day Rate Office Managers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

112. The other Day Rate Office Managers are known to JAB, are readily identifiable, and can be located through JAB's records.

## JURY DEMAND

Dogie demands a trial by jury.

## RELIEF SOUGHT

Wherefore, Dogie prays for:

(a) an order allowing Dogie's FLSA claims to proceed as a collective action and directing notice to the other Day Rate Office Managers pursuant to § 216(b) of the FLSA;

(b) judgment finding JAB in violation of the FLSA and PMWA;

(c) judgment finding JAB liable to Dogie and the Day Rate Office Managers for unpaid overtime, and an equal amount of liquidated damages;

(d) judgment awarding Dogie and the Day Rate Office Managers reasonable attorneys' fees and costs of this action;

(e) judgment awarding Dogie and the Day Rate Office Managers pre- and post-judgment interest at the highest rates allowed by law; and

(f) such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Michael A. Josephson*
    **Michael A. Josephson**
    Texas Bar No. 24014780
    Federal ID No. 27157
    **Andrew W. Dunlap**
    Texas Bar No. 24078444
    Federal ID No. 1093163
    **Taylor A. Jones**
    Texas Bar No. 24107823
    Federal ID No. 3348814
    **JOSEPHSON DUNLAP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    tjones@mybackwages.com

    **AND**

    **Richard J. (Rex) Burch**
    Texas Bar No. 24001807
    Federal ID No. 21615
    **BRUCKNER BURCH PLLC**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**